# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOANNE M. LAEL,

    Plaintiff,

    v.                                                       Case No. 18-CV-1964

ANDREW M. SAUL,
**Commissioner of Social Security,**

    Defendant.

## DECISION AND ORDER

Joanne Lael seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is reversed and the case is remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

Lael filed an application for a period of disability and disability insurance benefits alleging disability beginning on December 4, 2012. (Tr. 18.) It was on this date that a steel plate fell on Lael's leg while she was working as a journeyman painter in a shipyard, tearing her Achilles tendon. (Tr. 461, 552.) In addition to her Achilles tendon injury, Lael alleges disability due to a back injury; deep vein thrombosis surgery; arthritis of the back, legs, knees, and hips; depression and anxiety; memory issues from head trauma; and numbness in the hands. (Tr. 329.) Lael's applications were denied initially and upon reconsideration. (Tr. 18.) Lael filed a request for a hearing and a hearing was held before an Administrative Law Judge

on October 12, 2017. (Tr. 54–104.) Lael testified at the hearing, as did Timothy N. Tansey, a vocational expert. (Tr. 18.)

In a written decision issued April 17, 2018, the ALJ found that Lael had the severe impairments of degenerative disc disease, obesity, varicose veins, osteoarthritis, left insertional Achilles tendinopathy, borderline intellectual functioning, anxiety disorder, and major depressive disorder. (Tr. 23.) The ALJ further found that Lael did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 23–27.) The ALJ found Lael had the residual functional capacity ("RFC") to perform sedentary work, but with the following limitations: only occasional stooping, crouching, kneeling, and crawling; avoid concentrated exposure to unprotected heights and the use of moving machinery; limited to unskilled work performing simple, routine, repetitive tasks; only occasional changes in the work setting and occasional decision-making; no interaction with the public; occasional interaction with coworkers; and work that allows individually performed tasks and no fast-paced production (end-of-day quotas are permitted). (Tr. 27–40.)

The ALJ found Lael unable to perform her past relevant work; however, the ALJ found that considering Lael's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. 40–41.) As such, the ALJ found that Lael was not disabled from her alleged onset date until the date of the decision. (Tr. 42.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review. (Tr. 1–6.)

**DISCUSSION**

*1.     Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

*2.     Application to this Case*

Lael argues the ALJ's decision is not supported by substantial evidence because the RFC failed to account for limitations established by the opinions of six treating and examining sources and because the ALJ improperly discounted Lael's subjective complaints. Lael further

3

argues that the Appeals Council erred by finding new evidence submitted after the ALJ rendered his decision immaterial. I will address each in turn.

### 2.1 Weight Given to Treating and Examining Provider Opinions

Lael argues the ALJ improperly discounted the opinions of the following treating and examining sources: physical therapist Jerad Arndt, Dr. Brenda Dierschke, Dr. William Enright, Dr. Marco Araujo, occupational therapist Troy Gutzman, and Dr. Richard Marks. (Pl.'s Br. at 7–13, Docket # 18.)

An ALJ must consider all medical opinions in the record, but the method of evaluation varies depending on the source. Generally, more weight is given to the medical opinions of treating sources. 20 C.F.R. § 404.1527(c)(2).[1] If the opinion of a treating source is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, the opinion is given "controlling weight." *Id.* Even if the ALJ finds that the opinion is not entitled to controlling weight, he may not simply reject it. SSR 96-2p. Rather, if the ALJ finds that a treating source opinion does not meet the standard for controlling weight, he must evaluate the opinion's weight by considering a variety of factors, including the length, nature, and extent of the claimant and physician's treatment relationship; the degree to which the opinion is supported by the evidence; the opinion's consistency with the record as a whole; and whether the doctor is a specialist. 20 C.F.R. § 404.1527(c).

---

[1] On January 18, 2017, the SSA published the final rules entitled "Revisions to Rules Regarding the Evaluation of Medical Evidence" in the Federal Register (82 FR 5844). The final rules became effective on March 27, 2017. For claims filed before March 27, 2017, however, the SSA continues to apply the prior rules. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply.").

The ALJ must always give good reasons for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. The ALJ must give reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. An ALJ can reject a treating physician's opinion only for reasons supported by substantial evidence in the record. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately two hours during an eight-hour workday and to remain in a seated position for approximately six hours of an eight-hour workday. SSR 96-9p, 1996 WL 374185, at *1 (July 2, 1996). It also requires an individual to be able to lift no more than ten pounds at a time and occasionally lift or carry articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a). Throughout the relevant time period, Lael's treating and examining providers gave relatively consistent work restrictions. Immediately following Lael's December 4, 2012 work injury, she was evaluated by physical therapist Jerad Arendt. Arendt provided the following assessment on December 19, 2012:

> Joanne is not a good match for her current job description [as a journeyman painter]. Specifically, Joanne would not meet the qualification of sedentary work as she cannot generate up to 10 pounds of force safely for work. Her best dynamic lift was pushing at 8#, she was able to lift 10 pounds but doing so would increase radicular symptoms down her L LE so her overall work level is below sedentary to be able to do work safely. Furthermore she scored Never for the majority of her mobility tests. This does not mean that she could not stand, sit, walk, etc. but that she would not be able to perform the task for up to a 1/3 of the work day to meet the DOT standard for Occasional work. Joanne had a difficult time maintaining any position for a long amount of time secondary [sic] her pain and radicular symptoms.

(Tr. 900–01.) On January 2, 2013, Lael's treating neurologist, Dr. Brenda Dierschke, adopted Arendt's findings, stating that Lael could return to work with Arendt's stated restrictions. (Tr.

5

447, 913.) Then on March 19, 2013, Lael's treating orthopedist, Dr. William Enright, opined that Lael should "continue her previous restrictions and avoid passive range of motion in therapy." (Tr. 551.) Although it is unclear what "previous restrictions" Dr. Enright was referring to, the ALJ interpreted this as the restrictions set by Arendt on December 19, 2012 and adopted by Dr. Dierschke. (Tr. 36.)

On April 4, 2013, Lael's treating pain management nurse practitioner, Rita Christensen, limited Lael to sedentary work, with a maximum lifting and carrying restriction of ten pounds and with a need to stand up and walk around for five minutes once an hour. (Tr. 826.) Later that month, Christensen reiterated the sedentary restrictions, adding that Lael was able to return to work with the same restrictions given by Dr. Enright. (Tr. 822.) On May 31, 2013, Lael's treating pain management specialist, Dr. Marco Araujo, again confirmed the sedentary restrictions and the restrictions given by Dr. Enright but added that Lael would need to be off "intermittently 1–2 days for procedures and 1–2 days per month." (Tr. 819.)

Also, in May 2013, Dr. Enright restricted Lael to a "sit down job only" (Tr. 550) and in July 2013, restricted her to a sit-down job with a ten-pound lifting restriction (Tr. 918). In October 2013, Lael's treating orthopedist, Dr. Richard Marks, opined that Lael should perform sit-down work only and use crutches and a boot. (Tr. 896.) In January 2014, Dr. Marks again restricted Lael to sit-down work. (Tr. 897.) In February 2014, Christensen again reiterated a sedentary work restriction. (Tr. 804.) In March 2014, Dr. Marks opined Lael could return to work with the following restrictions: sit-down work, with occasional breaks to move around, and use crutches, walker, or a scooter when moving around. (Tr. 1119.)

In August 2014, Troy Gutzman, an occupational therapist, evaluated Lael and found that Lael could not perform the full range of sedentary work "due to difficulties performing

6

the dynamic strength demands" of the work. (Tr. 882.) Gutzman further opined, however, that Lael was capable of performing the sitting, standing, and walking demands of sedentary work, if she was allowed to alternate among those tasks. (*Id.*) Thereafter on March 6, 2015, Dr. Marks opined that Gutzman's stated restrictions in August 2014 were permanent. (Tr. 898.)

The ALJ gave some weight to all of the opinions of Lael's treating and examining sources. (Tr. 37.) Specifically, the ALJ found that the opinions suggesting Lael could perform sedentary work were generally consistent with the record. (*Id.*) However, the ALJ disagreed with the opinions to the extent that they suggested Lael required an assistive device, required a sit-stand option, would be absent from work on an excessive basis, or generally did not retain the capacity to lift, carry, sit, stand, or walk at the sedentary level. (*Id.*) The ALJ rejected these portions of the opinions because Lael's pain management records generally failed to reveal any noted motor, extremity sensation, and/or arm and hand use deficits or abnormalities. The ALJ further noted that a physical therapist, an occupational therapist, and a nurse are not acceptable medical sources. (*Id.*)

When a claimant has an RFC for less than a full range of sedentary work, this reflects "very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare." SSR 96-9p, 1996 WL 374185, at *1. Thus, whether the individual should be found disabled will depend greatly on the specific limitations and how much the limitations erode the occupational base. In this case, the ALJ generally agreed with Lael's treating and examining medical providers that she should be limited to sedentary work. Where the disagreement comes, however, is in her ability to sit, stand, and walk. At the hearing, the VE clarified that the jobs he testified the hypothetical person with Lael's RFC could perform

7

would involve standing and walking up to two hours and sitting continuously for up to six hours. (Tr. 103.) Although the performance of sedentary work generally requires an individual to be able to stand and walk for up to two hours and sit for up to six hours, an individual incapable of doing these actions may not necessarily be disabled. For example, SSR 96-9p explains that:

> The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday. If an individual can stand and walk for a total of slightly less than 2 hours per 8-hour workday, this, by itself, would not cause the occupational base to be significantly eroded. Conversely, a limitation to standing and walking for a total of only a few minutes during the workday would erode the unskilled sedentary occupational base significantly. For individuals able to stand and walk in between the slightly less than 2 hours and only a few minutes, it may be appropriate to consult a vocational resource.

1996 WL 374185, at *6. Similarly, an individual needing to alternate the required sitting of sedentary work by standing and/or walking periodically is not necessarily disabled. As SSR 96-9p explains:

> Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

*Id.* at *7.

The ALJ erred in rejecting the opinion that Lael required a sit-stand option. The ALJ failed to explain his disagreement with this portion of the opinions, beyond stating that her medical records from Advanced Pain Management ("APM") generally failed to show any motor or extremity sensation deficits. (Tr. 37.) While the ALJ cited the APM records at length, his analysis of those records is fatally lacking. The ALJ has one long paragraph citing

8

many APM records indicating abnormalities. (Tr. 31.) He then moves on to a second paragraph where he states that other APM records show normal findings. (*Id.*) The only reason the ALJ gives for assigning more weight to the normal findings is that the abnormal findings were "minimal." (*Id.*) It is unclear how the ALJ, who is (presumably) not a doctor, comes to that conclusion. For example, the ALJ cites records showing reduced lower extremity strength, positive straight leg raise testing, and unsteady balance. (*Id.*) In what way are these abnormal findings "minimal"?

The record supports that Lael has difficulties staying in one position (i.e., sitting, standing, or walking) for very long. Lael testified that she "can't stand to sit too long and [t]hen I can't stand too long." (Tr. 89.) In her Adult Function Report, Lael stated that she could only sit for ten to thirty minutes without a break. (Tr. 298.) When her physical therapist attempted to evaluate her, he noted that Lael was unable to sit or stand for any length of time and "kept getting up and then sitting down due to pain." (Tr. 451.) The physical therapist concluded that he could not "help her in such an acute state." (*Id.*) Lael told Christensen that her "thighs go numb with prolonged sitting" (Tr. 963) and that her pain generally increased with sitting or standing too long (Tr. 974, 1042, 1060, 1076).

Given Lael's leg and ankle problems, a limitation to sedentary work (which involves mostly sitting) seems appropriate. The problem, however, is that the ALJ fails to consider the record evidence (as cited above) that Lael also has difficulties with prolonged sitting. Again, Gutzman opined that Lael was capable of performing the sitting, standing, and walking demands of sedentary work, *if* she was allowed to alternate among those tasks. (Tr. 882.) Dr. Marks agreed and found Gutzman's stated restrictions were permanent. (Tr. 898.) Given the record evidence supporting the treating providers' opinions that Lael requires a sit-stand

9

option, and the lack of rationale for rejecting this, the case must be remanded for proper consideration of the treating providers' opinions.

### 2.2 Assessment of Subjective Complaints

Lael argues the ALJ erred in finding her subjective complaints of disabling symptoms not entirely consistent with evidence of record. Because this matter is being remanded on other grounds, I will only briefly address the ALJ's analysis of Lael's subjective complaints to provide guidance on remand. The ALJ discounted Lael's stated symptoms because "the record reveals generally normal with only minimal findings, only sporadic emergency room presentations for alleged symptoms, and a conservative course of treatment other than lower extremity vein stripping." (Tr. 29.) Pursuant to SSR 16-3p, if a claimant's statements regarding the intensity and persistent of her symptoms are not substantiated by the objective medical evidence, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record and a variety of factors articulated in the ruling.

The ALJ's primary error, as noted above, is that despite citing many of Lael's medical records—including evidence supporting Lael and evidence supporting the ALJ's determination—the decision has little explanation as to why the ALJ gives more weight to the "normal" findings. This is not a case where the record overwhelmingly shows normal findings with only occasional abnormal findings. In fact, the ALJ seemingly cites more abnormal findings then normal ones. (Tr. 29–31.) It appears the reason the ALJ discounts the abnormal findings is because he believes those findings are "minimal," while the normal findings are significant. But why, for example, is a positive straight leg raise test a "minimal" finding and a negative straight leg raise test a significant finding? (Tr. 29–30, citing Bellin records.) It would seem findings of pain, tenderness, reduced range of motion, an antalgic

gait, and reduced sensation would be more than "minimal" in a person alleging an inability to sit, stand, or walk for long periods of time. As the decision is written, I cannot follow the ALJ's reasoning.

And as to the ALJ's reliance on Lael's "conservative course of treatment," assuming that anything short of surgery is considered "conservative," the ALJ did not address the fact that her treating orthopedist, Dr. Marks, told her that as to her Achilles tendinopathy, "to proceed with surgical intervention in light of [her] chronic nerve problem may actually exacerbate that problem." (Tr. 787.) Similarly, as to her lumbar facet hypertrophy and stenosis, she was told that she was not a surgical candidate. (Tr. 1106.) It is not clear whether the ALJ considered this evidence when finding her treatment "conservative." Thus, remand is required.

### 2.3 New and Material Evidence

Finally, Lael argues the Appeals Council erred in finding that new evidence she submitted was not "material." The Appeals Council must consider "new and material evidence" in deciding whether a case before it qualifies for review. *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012) (citing 20 C.F.R. §§ 404.970(b), 416.1470). Specifically, the regulation provides, in relevant part:

> (b) If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

11

20 C.F.R. § 409.970(b). The Seventh Circuit has explained that § 409.970(b) contemplates a three-step process:

> Under the regulation, once the Council has assured itself that the proffered new material related to the appropriate time period, the first step it must take is to decide whether the submission is really "new" and "material." If it is, the Council must proceed under the second sentence to evaluate the entire record including that new and material evidence. If it concludes as a result of that evaluation that the administrative law judge's action appears to be contrary to the weight of the evidence "currently" of record—that is, the old evidence plus the new submissions—only then does it proceed to a full review of the case.

*Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997).

Whether the Appeals Council's decision is reviewable depends on the grounds on which the Council declined to grant plenary review. *Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015). If the Council determined that Lael's newly submitted evidence was non-qualifying under the regulation, then the court retains jurisdiction to review that conclusion for legal error. *Id.* However, if the Appeals Council deemed the evidence new, material, and time-relevant but denied plenary review of the ALJ's decision based on its conclusion that the record—as supplemented—does not demonstrate that the ALJ's decision was "contrary to the weight of the evidence," the Council's decision not to engage in plenary review is "discretionary and unreviewable." *Id.* (internal citation omitted).

The new evidence Lael provided to the Appeals Council was a prescription dated May 24, 2018 for a manual wheelchair from Oneida Community Health Center, along with a "delivery ticket" confirming delivery of the wheelchair to Lael. (Tr. 2, 10–11.) The Appeals Council stated that this evidence did not relate to the period at issue; thus, it did not affect the ALJ's decision. (Tr. 2.) Given that the Appeals Council's decision states that it rejected Lael's new evidence as non-qualifying under the regulation, the decision is reviewable. The Appeals

Council's decision that the evidence was not new and material is reviewed for legal error. While the evidence was "new" because it was not in existence at the time of the ALJ's April 12, 2018 decision, *see Stepp*, 795 F.3d at 725, I do not find the Appeals Council erred in determining that the new evidence was immaterial.

Evidence is "material" under § 404.970(b) if it creates a "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Id.* (internal quotation and citation omitted). Lael argues that the wheelchair prescription rebuts part of the ALJ's reasoning for discounting her subjective complaints, specifically, that she was less credible because no doctor explicitly prescribed her a walker. (Pl.'s Br. at 20, citing Tr. 33.) The ALJ did not, however, discount her subjective complaints because an assistive device was not prescribed. Rather, the ALJ found that the use of an assistive device was not a "permanent restriction," but a temporary recommendation in the context of ongoing treatment. (Tr. 33.) The ALJ also found that the record did not support that an assistive device was generally "required." (Tr. 37.) The documents provided (Tr. 10–11) do not counter the ALJ's conclusion that the use of an assistive device was not a permanent or necessary restriction. The ALJ already considered the record evidence suggesting that she use a wheelchair if needed (Tr. 33), and while the prescription indicates she is using one, it does not shed any light on whether this is a permanent or necessary restriction. For these reasons, I find the Appeals Council did not err in its determination.

## CONCLUSION

Lael argues the ALJ erred in considering the opinions of her treating and examining providers and in assessing her subjective complaints. She further argues the Appeals Council erred in failing to consider a wheelchair prescription post-dating the ALJ's decision. While I

agree the ALJ erred in considering the providers' opinions and her subjective complaints, I do not find the Appeals Council erred in failing to consider the wheelchair prescription. However, on remand, Lael may present this evidence to the ALJ for consideration.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 5th day of December, 2019.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge